IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SONJA FLOYD KEITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 1:22-cv-418-ECM |
| | ) | [WO] |
| MARC AGRELLA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

In July 2022, Plaintiff Sonja Floyd Keith ("Keith") filed a complaint in this Court after a traffic stop with local police escalated to her arrest and eventual prosecution. (Doc. 1). Keith then amended her complaint in May 2023, alleging a host of constitutional violations and state law claims against the police officers who arrested her and their employer, the City of Dothan. (Doc. 39).

Now pending before the Court are four motions to dismiss Keith's amended complaint for her alleged failure to state a claim: one by the Defendant City of Dothan ("the City") (doc. 43), one by Defendant James McCree ("Officer McCree") (doc. 50), one by Defendant Robert Chavis ("Officer Chavis") (doc. 74), and the final one by Defendant Marc Agrella ("Officer Agrella") (doc. 88) (collectively "the Defendants"). After a review of the record, the applicable law, and for the reasons stated, the City's motion (doc. 43) is due to be granted, Officer McCree's and Officer Chavis' respective motions (docs. 50, 74)

are due to be granted in part and denied in part, and Officer Agrella's motion (doc. 88) is moot.[1]

## II.  JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)–(4).  The Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  The parties do not contest personal jurisdiction or venue, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Conclusory allegations that are merely "conceivable" and fail to

---

[1] Officer McCree, Officer Chavis, and Officer Agrella are referred to collectively as "the Officers."

rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## IV. FACTS[2]

On the night of July 17, 2020, Keith, an African American woman, was driving through the city of Dothan, Alabama.  Keith, en route from her home in Stone Mountain, Georgia, had her minor child in the back seat of her vehicle with her.  During her trip, Keith made a left turn across traffic into a motel parking lot, at which point Officer Agrella of the Dothan Police Department pulled her over.  Keith stopped in the parking lot and waited before additional Dothan police officers, including Officer Chavis and Officer McCree, arrived at the scene.

Over the next twenty minutes, Officer Chavis accused Keith of various offenses before she exited her vehicle and referred to Officer Chavis' actions as harassment.  Officer Chavis ordered her back to her car, at which point she returned, sat down, and requested to speak with Officer Agrella, whom she believed to be issuing a traffic citation for failing to properly use her turn signal.  Immediately after Keith requested to speak with Officer

---

[2] This recitation of the facts is based on Keith's amended complaint (doc. 39).  The Court recites only the facts pertinent to resolving the Defendants' motions to dismiss.  For purposes of ruling on the motions, the facts alleged in the amended complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to Keith.

Agrella, Officer Chavis reached toward her vehicle's door, opened it without notice, and grabbed Keith's wrist.  Officer Chavis and Officer McCree then struggled with Keith in her car, simultaneously pushing her further inward while demanding that she get out of the vehicle.

The Officers removed Keith from her car, handcuffed her, and arrested her as her child watched from the backseat.  The child was ordered into custody or foster care by the Alabama Department of Human Resources.  Keith was subsequently charged with resisting arrest and disorderly conduct.  She was later acquitted of both counts.

Following her arrest, Keith brought this action against the three officers at the scene and the City of Dothan, seeking compensatory and punitive damages, attorney's fees, and court costs.  She later amended her complaint, after which each of the Defendants moved to dismiss her claims.  Subsequently, Keith voluntarily dismissed Officer Agrella from the action. (Doc. 91).

## V.  DISCUSSION

Keith's complaint, as amended, brings five counts under federal and state law: a Fourth Amendment claim against the Officers; a Fourth Amendment claim against the City; a race discrimination claim under 42 U.S.C. § 1981; and state law claims for malicious prosecution, negligence, and wantonness. (Doc. 39).   The Defendants have moved to dismiss all claims.  While the City's motion (doc. 43) is due to be granted, the motions by Officer McCree and Chavis, who are sued in their individual capacities (doc. 39 at 3), are due to be granted in part and denied in part.  Having been voluntarily

dismissed, Officer Agrella's motion is moot.  The Court begins its analysis with the federal claims before addressing the state law claims.

## A.  Federal Law Claims

Keith asserts three federal claims against the Defendants, all of which are brought pursuant to § 1983.  Section 1983 provides a civil cause of action for violations of protected constitutional rights.  Notably, the statute "does not in itself create federal rights." *Sprauer v. Town of Jupiter*, 331 F. App'x 650, 652 (11th Cir. 2009).[3]  Rather, it protects existing constitutional rights, such as the right to be free from an arrest without probable cause in violation of the Fourth Amendment. *Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010).

Count I asserts a claim for unreasonable search and seizure (*i.e.*, false arrest), Count II contains a federal claim against the City for municipal liability, and Count III brings a § 1981 claim against each of the Defendants.

### *1.  Count I: Fourth Amendment Violations (The Officers)*

In her first count, Keith alleges that each of the three officers "deprived [her] of her [c]onstitutional rights by unreasonably searching and seizing her and falsely arresting her." (Doc. 39 at 8).  The Officers each assert the defense of qualified immunity, which "shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020) (quoting *Echols v. Lawton*, 913

---

[3] The Court here, and elsewhere in the opinion, cites to non-binding authority.  While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

F.3d 1313, 1319 (11th Cir. 2019)).  Qualified immunity "serves the purpose of allowing 'government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation.'" *Carter v. Butts Cnty.*, 821 F.3d 1310, 1318–19 (11th Cir. 2016) (quoting *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003)).  It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

A defendant who asserts entitlement to qualified immunity "must first establish that he was acting within the scope of his discretionary authority." *Carter*, 821 F.3d at 1319. Once the defendant has done so, "the burden shifts to the plaintiff to establish that qualified immunity is inappropriate." *Garcia v. Casey*, 75 F.4th 1176, 1185 (11th Cir. 2023) (quoting *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016)).  The plaintiff must show: (1) that the officer violated a constitutional right; and (2) that this right was clearly established at the time of the violation. *Id.*

Arresting an individual without probable cause is a violation of a constitutional right; namely, the Fourth Amendment's right to be free from unreasonable seizures. *Id.* at 1186.  "The converse is also true, which means that 'the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest.'" *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018) (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010)).  Probable cause "exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown*, 608 F.3d at 734.

Determining whether an officer had probable cause to conduct a seizure requires asking "whether a reasonable officer could conclude . . . that there was a substantial chance of criminal activity." *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 60 (2018)).

However, establishing qualified immunity from a claim of false arrest does not require showing the existence of actual probable cause. *See Garcia*, 75 F.4th at 1186. Rather, officers need only "arguable" probable cause to escape liability. *Id.* Arguable probable cause is a shorthand, considering whether "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Id.* at 1187 (quoting *Wesby*, 583 U.S. 48 at 593). Arguable probable cause protects officers who "reasonably but mistakenly conclude that probable cause is present." *Brown*, 608 F.3d at 735.

In this case, Keith alleges that *all three* of the Officers violated her rights by placing her under arrest for crimes which she did not commit. (Doc. 39 at 5). Therefore, the Court analyzes the Officers together.[4] The Officers each establish that they were performing a discretionary function. (Doc. 51 at 10; doc. 74 at 12–13); *see Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (explaining how "there can be no doubt" that an officer was acting in his discretionary capacity when arresting an individual). Keith failed to respond to this argument. Likewise, Keith does not bring a claim concerning the constitutionality

---

[4] Keith alleges that "Officers Agrella, Chavis and McCree placed Ms. Keith under arrest." (Doc. 39 at 5). Therefore, although Agrella has been voluntarily dismissed (thus, mooting his arguments and motion), his actions are still relevant to the analysis of whether Officer McCree and Officer Chavis had actual or arguable probable cause, as they could have relied on the collective knowledge of other law enforcement officials at the scene.

of her initial traffic stop.[5]  Instead, the arguments focus on whether probable cause existed to arrest Keith for disorderly conduct, resisting arrest, and her alleged traffic infraction.  To determine whether the facts as alleged demonstrate even arguable probable cause to arrest Keith for any of the three crimes, the Court must examine the statutory text of each.

### a. Failure to Signal

The Court's analysis begins with perhaps the most modest transgression: a traffic infraction.  Like many other jurisdictions, Alabama requires the use of turn signals when changing lanes or turning left and right. ALA. CODE § 32-5A-133.  The failure to use a turn signal is considered a misdemeanor offense. ALA. CODE § 32-5A-8.  The Officers[6] argue that because Keith was stopped for an alleged failure to use her turn signal, they could properly place her under arrest for committing such an offense. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").  This arrest would still be appropriate under the so-called any-crime rule, "which insulates officers from false-arrest claims so long as probable cause existed to arrest the suspect for some crime, even if it was not the crime the officer thought or said had occurred." *Williams*, 965 F.3d at 1158.

This argument fails because it presupposes that Keith committed a traffic infraction, a fact that she does not concede. Keith alleges that she "execute[d] a left turn across traffic,"

---

[5] Because Keith did not bring a claim challenging her initial traffic stop, the Court does not analyze its constitutionality.

[6] Officer Chavis makes this argument explicitly. (Doc. 74 at 5–6).  Although Officer McCree does not make this argument, it applies to his actions, nonetheless.

before Officer "Agrella pulled [her] over effectuating a traffic stop." (Doc. 39 at 4).  She later states that, as she waited in her car, Officer Agrella "was apparently writing a traffic ticket for failing to properly use her turn signal." (*Id.*).  Construing the facts and all reasonable inferences in Keith's favor, which the Court must do at this stage, these facts do not permit the Court to conclude that Keith failed to use her turn signal.  Discovery may reveal additional facts which could impact the analysis on this issue at a later time in the litigation.  But at this stage, and accepting the allegations in the complaint, the Court finds that the Officers lacked arguable probable cause to arrest Keith for failing to use her turn signal.

### b. Disorderly Conduct

The Court now considers whether the Officers could have properly arrested Keith for disorderly conduct.  Alabama law defines disorderly conduct as a person, "with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof," taking one of six actions, such as engaging "in violent tumultuous" behavior, making "unreasonable noise," or using "abusive and obscene language." *See* ALA. CODE § 13A-11-7.  Disorderly conduct is a class C misdemeanor. *Id.* § 13A-11-7(b).

The Officers argue that Keith exited her car and accused Officer Chavis of harassment, at which point each of the Officers could have reasonably interpreted Keith's actions as disorderly conduct. (*See* docs. 51 at 8; 74 at 6–7).  This argument fails to consider all the relevant allegations as pled by Keith.  In her amended complaint, Keith alleges that she exited her vehicle, "accus[ed] Officer Chavis of continued harassment," then "returned to her seated position in her vehicle as directed by Officer Chavis." (Doc. 39 at 4).  The

facts, taken in the light most favorable to Keith, neither establish that she engaged in threatening or violent behavior nor suggest that she made unreasonable noise or used abusive language.  There are no allegations of violence, aggression, or unreasonable yelling.  If anything, the allegation indicates that Keith voiced her concerns before following orders from the Officers by returning "to her seated position in her vehicle as directed by Officer Chavis." (*Id.*).  Again, discovery may reveal additional facts which could impact the Court's analysis at a later stage of the litigation.  But Keith's allegations, at this point, are sufficient to establish a lack of actual or arguable probable cause to arrest her for disorderly conduct.

### c.  Resisting Arrest

The Court turns to whether the Officers could have properly arrested Keith for resisting arrest.  Alabama law prohibits a person from intentionally preventing (or attempting to prevent) "a peace officer from affecting a lawful arrest of himself or of another person." ALA. CODE § 13A-10-41(a).  Resisting arrest is a class B misdemeanor. ALA. CODE § 13A-10-41(b).

Here, the Officers argue that they could have reasonably interpreted Keith's failure to exit her vehicle when told as her resisting arrest. (*See* docs. 51 at 8; 74 at 7).

The Officers' argument fails for two reasons.  First, as described in the prior two sections, under the allegations in the complaint, Keith was not under *lawful* arrest.  The allegations as pled establish a lack of actual or arguable probable cause to arrest Keith for either failing to use her turn signal or disorderly conduct.  "Resisting arrest quite obviously could not serve as probable cause for initiating [Keith's] arrest—that would put the cart

before the horse." *See Exford v. City of Montgomery*, 887 F. Supp. 2d 1210, 1224 n.7 (M.D. Ala. 2012).  Therefore, Keith could not have been arrested for resisting arrest absent some other lawful arrest occurring.

Second, even assuming that there was some independent lawful basis for Keith's arrest, the allegations in her amended complaint do not show, at this stage, that she was resisting.  Keith alleges that Officer "Chavis lunged toward the driver's door" of her vehicle, opened it, and "grabbed [her] by her wrist." (Doc. 39 at 5).  She continues by alleging that both Officer Chavis and Officer McCree "repeatedly wrestled and pushed [her] into the corner of her vehicle while at the same time demanding" that she exit her car. (*Id.*).  Keith's allegations do not include physical, verbal, or otherwise resistance to the Officers' use of force.  To the contrary, Keith's allegations permit a reasonable inference that she could not have exited her vehicle *because* the Officers were using force against her. (*See* doc. 39 at 5, para. 19) ("Defendants Chavis and McCree then repeatedly wrestled and pushed Ms. Keith into the corner of her vehicle while at the same time demanding that she 'get out of the car.'").  For these reasons, the allegations do not lead to a reasonable inference that Keith was resisting arrest.

Accordingly, accepting as true the facts alleged and drawing all reasonable inferences in the light most favorable to Keith, the Court concludes that the Officers acted without arguable probable cause when they arrested Keith.  Consequently, qualified immunity must be denied at this juncture.  The Officers are free to reraise the issue at summary judgment if further discovery supports their defense.  However, their motions to dismiss are due to be denied as to Count I.

### 2. *Count II: Fourth Amendment Violations (The City)*

Count II of Keith's complaint raises a § 1983 claim against the City.[7] She claims that the City has "customs and practices (1) in failing to train officers in making lawful arrests, and (2) in failing to discipline and/or educate previous officers' use of unconstitutional and unreasonable seizures."[8] (Doc. 39 at 9–10). She alleges that these customs and policies "were the driving force behind the unconstitutional seizure and arrest of [herself]." (*Id.* at 10).

"A municipality is not automatically liable under Section 1983 even if it inadequately trained or supervised its employees and those employees violated plaintiff's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Instead, the failure to train must be a city policy. *Gold*, 151 F.3d at 1350. Because there rarely is such a written policy, a plaintiff may prove a policy by showing that a City's failure to train "evidenced a 'deliberate indifference' to the rights of its inhabitants." *Id.* To establish deliberate indifference, a plaintiff must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.* A city's notice that there

---

[7] Keith's claim is not, and cannot be, based on the theory of respondeat superior. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978).

[8] Keith's complaint references the City's "failure to discipline" its police officers. However, she makes no mention of such theory of recovery in her response to the City's motion to dismiss, focusing solely on her "failure to train" theory. (*See* doc. 48). Accordingly, the Court does not analyze a "failure to discipline" theory because Keith does not argue for it.

is a need to train is usually established with factual allegations showing a widespread pattern of similar constitutional violations by untrained employees. *Connick*, 563 U.S. at 61.

Keith argues that "she has sufficiently alleged the City's violation" by "adequately asserting the City's unconstitutional policies and customs, and the persistent and widespread practice of making unlawful and false arrests reflecting the City's deliberate indifference." (Doc. 48 at 9). The City, on the other hand, contends that she has "not identif[ied] any non-conclusory allegations which plausibly demonstrate a policy or custom that constitutes deliberate indifference to the Fourth Amendment right against unreasonable seizure." (Doc. 49 at 13).

The Court agrees with the City for two reasons. First, most of Keith's factual allegations supporting her second count revolve around the City's and its officers' alleged use of *excessive force*, not unreasonable seizure. (*See* doc. 39 at 6–7). The imposition of § 1983 liability against the City requires establishing (1) the violation of a constitutional right, (2) that the City's policy or custom constituted deliberate indifference to that right, and (3) causation between the policy or custom and the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Keith neither has brought a claim of excessive force against any of the Officers nor pointed to a specific instance in which an officer used excessive force against her. Therefore, she has not plausibly alleged that her constitutional right to be free from excessive force was violated, and thus she cannot show that a City policy or custom caused the violation of that right. Consequently, Keith fails to allege facts sufficient to establish a City policy or custom of "failing to train officers in making

unlawful arressts, [sic]" or "failing to discipline and/or educate previous officers' use of unconstitutional and unreasonable seizures" as it pertains to her case. (Doc. 39 at 10).

Second, the majority of Keith's remaining allegations relating to Count II are conclusory. Count II's allegations, each of which assert information about the City or the alleged knowledge of its policymakers, fail to meet the plausibility standard. That is, they do not enable the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Allegations such as those in paragraphs forty-four through forty-eight are merely "a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 664.

In turning to Keith's factual allegations, the Court is left with the two allegations which do not relate to Keith's specific arrest or excessive force: paragraphs twenty-four and twenty-five. In paragraph twenty-four, Keith alleges that "[r]ecords reflect that African Americans are arrested in the City of Dothan approximately 3 ½ times the rate of Caucasians for low-level, nonviolent crimes." (*Id.* at 5). Paragraph twenty-five follows by asserting that "upon information and belief," the Officers and the City "have engaged in a pattern and practice of falsely accusing and arresting African Americans." (*Id.* at 5–6). Even if the Court assumes that paragraph twenty-four is true, it could do so with paragraph twenty-five.[9] This allegation, based on information and belief, runs into the same issues

---

[9] Paragraph twenty-four, alone, is not enough to plausibly allege a custom or policy of failing to train officers resulting in the false arrests of individuals such as Keith. The allegation does not address false

the allegations in Count II do: a lack of factual support.  Like her allegations in Count II, paragraph twenty-five alleges that a "pattern and practice of falsely accusing and arresting African Americans" exists without further discussion or allegations of any false arrests but her own.  And while Keith need not go so far as to name the policymaker with knowledge of a custom or policy of falsely arresting citizens, she needs to allege more than she does here. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir. 2016) (holding allegations sufficient to state a municipal liability claim when plaintiff alleged that the City unlawfully took his boat; he was told by individuals and was "independently aware" that the same occurred to other boat owners; the City referred to taking boats as a "cleanup" program; and a custom or policy of illegal boat removals existed).

Beyond that of paragraph twenty-four, which alone is insufficient to plausibly allege a custom or policy leading to *false* arrests, Keith's allegations regarding her claim against the City are conclusory, speculative, and vague.  After discarding the conclusory allegations in the amended complaint, the Court concludes that Keith has not sufficiently pled a § 1983 claim against City.  Thus, Count Two is due to be dismissed.

### 3.  *Count 3: § 1981 Race Discrimination*

Count III of Keith's complaint alleges that the Defendants deprived her of her Fourth Amendment rights due to her race, "in violation of her rights and protections

---

arrests or arrests without probable cause.  Rather, it exemplifies a disparity in arrests for "low level, non-violent crime" between African-Americans and members of other races. (Doc. 39 at 5).  That is not relevant to the false arrests of citizens generally by City officers.  Allegations of statistical racial discrimination in arrests are not the same as allegations of *false* arrest statistics.

provided by 42 U.S.C. § 1981." (Doc. 39 at 10–11).  This claim is due to be dismissed against all Defendants.

As an initial matter, some of the Defendants contend that Keith's § 1981 claim is not brought pursuant to § 1983, as is required for any § 1981 action. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) (explaining that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units").  This argument fails here.  A close reading of Keith's amended complaint reveals that Keith brings her federal claims pursuant to § 1983. (Doc. 39 at 2).  Paragraph two states that "[t]he constitutional violations include claims brought pursuant to 42 U.S.C. § 1983 and arise from . . . the deliberate indifferent and racial discrimination of the City of Dothan[,] resulting in the injuries and damages to Plaintiff Sonja Floyd Keith." (*Id.*)  This paragraph is then incorporated into Count III through paragraph forty-nine. (*Id.* at 10).  While her amended complaint is not a model of clarity in this respect, Keith has adequately pled her § 1981 claim against the Defendants as brought pursuant to § 1983.

The Defendants also argue that Keith's § 1981 claim warrants dismissal because she does not identify an impaired contractual relationship.[10]  Keith, in response, claims that she is proceeding under the equal benefits clause of § 1981.  In support, she relies on

---

[10] Section 1981 provides, in pertinent part, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C.A. § 1981(a).

caselaw outside of the Eleventh Circuit,[11] most notably *Mahone v. Waddle*, 564 F.2d 1018 (3rd Cir. 1977).[12]   In *Mahone*, the Third Circuit held that plaintiffs who were falsely arrested on account of their race had sufficiently stated a claim to proceed under the equal benefits clause of § 1981. *Id.* at 1028.  It noted that the clause "ha[d] not been considered in modern times either by the Supreme Court or by any of the various circuit courts of appeals." *Id.* at 1027.  After analyzing the text of the statute and the specific conduct alleged (false arrest, verbal and physical abuse, and false testimony, all motivated by racial bias), the Court held that "the facts alleged [fell] within the broad language of both the equal benefits and like punishment clauses of Section 1981." *Id.* at 1028.  The Third Circuit further "buttressed" its conclusion on its understanding that Congress enacted § 1981 intending "to eradicate all discrimination against blacks and to secure for them full freedom and equality in civil rights." *Id.*  It saw "no such danger" of an influx of litigation or the "rise [of] a federal cause of action for every racially motivated private tort." *Id.* at 1029.

     This Court, bound only by decisions of the Eleventh Circuit and Supreme Court of the United States, agrees with the Defendants.  Notably, *Mahone* was decided almost thirty

---

[11] In her responses to some of the Defendants' motions, Keith cites to precedent from the Eleventh Circuit claiming that "a Section 1981 claim brought against state actors under the equal benefits clause of Section 1981 must be asserted pursuant to" § 1983.  (Doc. 48 at 11; doc. 57 at 11).  While her statement about pursuing her § 1981 claim under § 1983 is correct, the rest of the assertion about her cited case is not. *See Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009) (discussing a hostile work environment claim under the Equal Protection Clause and § 1981, not the equal benefits clause).  Moreover, based on this Court's independent research, the Eleventh Circuit has not addressed whether a plaintiff can state a viable claim under the equal benefits clause of § 1981.

[12] Throughout her three responses (docs. 48, 57, and 83), Keith cites to both circuit and district court caselaw from the First Circuit, Second Circuit, Third Circuit, Fifth Circuit, and Ninth Circuit, all of which appear to recognize (or have formerly recognized), at least in part, claims under the equal benefits clause of § 1981. These cases are not binding on this Court, and the Court does not find them persuasive in this case.

years before the Supreme Court decided *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006).  In *Domino's Pizza*, the Supreme Court opined that "nothing in the text of § 1981 suggests that it was meant to provide an omnibus remedy for all racial injustice." *Id.* at 476. "If so, it would not have been limited to situations involving contracts." *Id.*  Rather, "[a]ny claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." *Id.* at 476.  The Eleventh Circuit has made this observation as well. *See Kinnon v. Arcoub, Gopman & Assocs.*, Inc., 490 F.3d 886, 890 (11th Cir. 2007) (quoting *Domino's Pizza*, 546 U.S. at 476).  Without caselaw from this Circuit supporting Keith's argument, the Court finds that Keith has failed to allege a violation of a right protected by § 1981, and Count III is due to be dismissed. *See Jones v. Flathmann*, 2008 WL 918702, at *3 (M.D. Ala. Apr. 1, 2008) (granting summary judgment "[b]ecause § 1981 protects against racial discrimination in the making and enforcing of contracts, however, and not excessive force as alleged in the Complaint"); *see also Bartley v. Kim's Enter. of Orlando, Inc.*, 2010 WL 11626849, at *4 (M.D. Fla. Dec. 20, 2010) (dismissing § 1981 claim because plaintiff, who claimed Fourth Amendment violations, "fail[ed] to identify the impairment of any contractual relationship"); *Lapread v. Buis*, 2024 WL 916541, at *2 (M.D. Fla. Mar. 4, 2024) (finding the same).

Even if this Court had found that Keith could proceed with a § 1981 claim under her preferred theory, her allegations still fail to sufficiently state a claim.  To state a claim under § 1981 outside of the employment context, Keith must allege "(1) [s]he is a member of a racial minority, (2) the defendant intended to racially discriminate against [her], and

(3) the discrimination concerned one or more of the activities enumerated in the statute." *See Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1308 (11th Cir. 2010).  The second element holds importance because, "§ 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).[13]  Keith's § 1981 claim against the City, like her claim in Count II, must be based on a City custom or policy. *Monell*, 436 U.S. at 694.  Assuming for the sake of the argument that Keith meets the first and third elements, her allegations would still fail to plausibly allege the second.

Keith's allegations in Count III, which largely track those in Count II, are conclusory or speculative for the same reasons as those in Count II: a lack of factual support.  Moreover, her statement of facts fails to allege sufficient facts establishing that *her specific* false arrest was due to her race.  She does not sufficiently allege facts from which the Court can reasonably infer that the Officers intended to falsely arrest her because she is African American.  Thus, she cannot establish that the Officers acted with purposeful discriminatory intent as required by the second element.

Furthermore, the sole allegations in the facts section of the complaint that relate to any alleged racial discrimination (paragraphs twenty-four and twenty-five),[14] as discussed in the section above, are not enough to establish a claim under § 1981 because they fail to

---

[13] In her response to the City's motion, Keith argues under a disparate impact theory. (Doc. 48 at 12–13). Disparate impact claims are not cognizable under § 1981. *See Gen. Bldg. Contractors Ass'n, Inc.*, 458 U.S. at 391 (1982); *see also Key v. Hyundai Motor Mfg., Alabama, LLC*, 2021 WL 3909663, at *12 (M.D. Ala. Aug. 31, 2021).

[14] The remaining allegations in the facts speak to excessive force, a claim Keith does not bring.

sufficiently allege a custom or policy of racial discrimination by the City.[15]  Alleging that the City arrests more African Americans than Caucasians for low level, non-violent crimes does not lead to a reasonable inference that the City does so because it holds a custom or policy of racial bias.  Keith must plead more to allege that City officers are abiding by a racial custom or policy in choosing who they arrest.  *See Swint v. City of Wadley*, 51 F.3d 988, 1000 (11th Cir. 1995) ("Absent some evidence of racially disproportionate arrests compared to the actual incidence of violations by race, there is no basis for inferring racially selective law enforcement.").  Further, paragraph twenty-five, like the analysis in Count II, is conclusory.  Keith's own experience, coupled only with her information and belief, is insufficient to plausibly allege that the Officers or the City routinely falsely accuse and arrest African Americans. *See Vickers v. Georgia*, 567 F. App'x 744, 748 (11th Cir. 2014) (dismissing claim when plaintiff "merely cited to his own interactions with law enforcement and the judicial system which is insufficient to allege a practice or policy of discrimination as to African American males generally").  Absent something further, Keith cannot state a § 1981 claim against the City.  Accordingly, Keith's § 1981 claim is due to be dismissed as to all Defendants.

### B.  State Law Claims

Keith brings two state law claims, one for malicious prosecution[16] against all Defendants, the other for negligence and wantonness against the Officers.  First, the Court

---

[15] Not only do Keith's allegations fail to allege a custom or policy, but they also fail to establish causation. In other words, in light of the lack of allegations surrounding discriminatory intent as to her own arrest, Keith fails to sufficiently allege that any racial custom or policy was the cause of her specific false arrest.

[16] In their briefs, some of the Officers contend that Keith's malicious prosecution claim is based in federal law.  However, Keith's claim is not controlled by the interpretation of the Defendants.  Her complaint, and

addresses the claim against the City.  Keith's amended complaint indicates that she asserts her state claim of malicious prosecution against the City. (*See* doc. 39 at 13–14) (alleging that "each of the named Defendants" should be held liable).  The City, however, aptly points out that ALA. CODE § 11-47-190 "bars malicious prosecution claims against municipalities." (Doc. 44 at 26) (citing a myriad of Alabama caselaw supporting this argument).  In her response, Keith conceded her malicious prosecution claim against the City. (Doc. 48 at 15).  Accordingly, it is due to be dismissed.

The Court now turns to the claims against the Officers, who argue that they are immune from Keith's claims as state agents. (*See* doc. 51 at 16–17; doc. 74 at 15–18). Alabama law cloaks police officers in state agent "immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." ALA. CODE § 6-5-338(a).

The parties here do not dispute that the Officers were acting within their discretionary functions within the scope of their law enforcement duties.  Therefore, for her claims to survive, Keith must establish that an exception to state agent immunity applies.  Alabama recognizes two: when the United States Constitution, Alabama Constitution, or Alabama laws, rules, or regulations "promulgated for the purpose of regulating the activities of a governmental agency require" non-immunity; or when the agent "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or

---

the representations made in her briefing, indicate that she intends to bring a state law malicious prosecution claim. (Doc. 57 at 13–14) (discussing malicious prosecution and negligence/wantonness as "[e]ach of these state law claims made by Plaintiff").

under a mistaken interpretation of the law." *Ala. State Univ. v. Danley*, 212 So. 3d 112, 130 (Ala. 2016) (citation omitted). This analysis largely tracks that of qualified immunity. *Cantu v. City of Dothan*, 974 F.3d 1217, 1236 (11th Cir. 2020). Thus, "the same facts that establish an officer is not entitled to qualified immunity 'also establish that [she] is not entitled to' state agent immunity." *Id.* (quoting *Hunter v. Leeds*, 941 F.3d 1265, 1284 (11th Cir. 2019)).

### 1. *Malicious Prosecution*

The Officers put forth three reasons why Keith's malicious prosecution claim should be dismissed. First, they contend that Keith has failed to establish a lack of actual or arguable probable cause for her arrest. Second, they contend that Keith has not sufficiently alleged a deprivation of liberty subsequent to her arraignment. Finally, they put forth arguments in favor of state agent immunity.

Each of the three reasons is insufficient to dismiss Count IV. The second reason, focusing on whether Keith sufficiently alleged a deprivation of liberty subsequent to her arraignment, contains the largest flaw because it rests on the Officers' mistaken interpretation that Keith brings a federal, as opposed to state, malicious prosecution claim. Malicious prosecutions claims brought pursuant to § 1983, though requiring a plaintiff to prove common law elements, are federal claims, not state claims. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). In the case of a warrantless arrest under federal law, "the plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment." *Kingsland*, 382 F.3d at 1235. Officer McCree, who relies on this argument, analyzes Keith's malicious prosecution claim as

though she brings it under federal law. (Doc. 51 at 14–15).  He does not cite to a single Alabama case in which the same logic applies to a state law malicious prosecution claim. Without existing support for his contention, the Court will not impute a federal law requirement onto Keith's state law claim.

The Officers' first and third reasons fare no better.  Both rely on analysis from the qualified immunity section above, in which the Court was unpersuaded by the Officers' arguments for actual or arguable probable cause.  Because the Officers are not entitled to qualified immunity on the facts as currently pled (*i.e.*, there was a lack of actual or arguable probable cause to arrest Keith), they also are not entitled to state agent immunity on those same facts at this stage. *See Cantu*, 974 F.3d at 1236.  Viewing the allegations in the light most favorable to the nonmovant, Keith has sufficiently pled her malicious prosecution claim.  Thus, under the version of the events presented by her, the Officers' motion is due to be denied as to Count IV.

### 2. *Negligence and Wantonness*

Count Five, Keith's final count, asserts that the Officers actions were negligent or wanton, causing Keith injuries.  Yet, allegations of negligent and wanton conduct do not defeat state agent immunity. *See Giambrone v. Douglas*, 874 So. 2d 1046, 1057 (Ala. 2003) (explaining that state agent immunity "is not abrogated for negligent and wanton behavior.").  Rather, state agent immunity "protects a [s]tate agent from liability for negligence or wantonness while performing discretionary functions, but does not serve as a shield against liability for bad faith conduct." *See L.S.B. v. Howard*, 659 So. 2d 43, 44 (Ala. 1995).

Count V of Keith's amended complaint alleges in conclusory fashion that the Officers "acted willfully, maliciously, fraudulently, in bad faith, beyond [their] authority or under a mistaken interpretation of the law." (Doc. 39 at 13–14). However, the title of the count ("Negligence and/or Wantonness") and the remaining allegations indicate that it is truly a claim proceeding under theories of negligence and wantonness. (*See id.*). Negligent conduct could not, by definition, have been willful or malicious. Similarly, "poor judgment or wanton misconduct . . . does not rise to the level of willfulness and maliciousness necessary to put the State agent beyond the immunity recognized in *Cranman*." *Ex parte Randall*, 971 So. 2d 652, 664 (Ala. 2007). As currently pled, Keith's allegations fail to overcome the barrier of state agent immunity. *See Thomas v. City of Dothan*, 2023 WL 6965006, at *5 (M.D. Ala. Oct. 20, 2023) (dismissing claim that alleged officers "acted willfully, maliciously" or otherwise under the immunity exception but was clearly "proceeding under a theory of negligence"). Accordingly, Count V is due to be dismissed.

## IV.  CONCLUSION

For the reasons stated, it is

ORDERED as follows:

1.   The City's motion to dismiss (doc. 43) is GRANTED and the City is DISMISSED with prejudice.

2. Officer McCree's and Officer Chavis' motions to dismiss (docs. 50, 74) are GRANTED to the extent that Counts III and V are DISMISSED. The motions are DENIED in all other respects.

3.  Officer Agrella's motion to dismiss (doc. 88) is DENIED as MOOT.

DONE this 29th day of March, 2024.

                /s/ Emily C. Marks
                EMILY C. MARKS
                CHIEF UNITED STATES DISTRICT JUDGE